UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MARK WILLIAM LATIMER,　　　　　　　　　CIVIL NO. 16-4004 (MJD/DTS)

　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　**REPORT AND RECOMMENDATION**

WARDEN MICHELLE SMITH,
GUARD CHAD EISCHENS and
GUARD TANNER JOHNSON,

　　　Defendants.

---

Mark William Latimer, Reg. No. 207687, MCF-Oak Park Heights, 5329 Osgood Ave. N., Stillwater, MN 55082, *Pro Se* Plaintiff

Bradley Simon, Esq. and Rachel E. Bell, Esq., Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St. Paul, MN 55101, for Defendants

---

## INTRODUCTION

Mark William Latimer alleges that correctional officers Tanner Johnson and Chad Eischens used excessive force in violation of the Eighth Amendment when handcuffing him and that Warden Michelle Smith created a policy that encouraged their unconstitutional use of force. He also alleges spoliation of video evidence. Latimer moves for summary judgment and for default judgment based on spoliation of evidence. Defendants move for summary judgment on the grounds that neither Johnson nor Eischens personally participated in handcuffing Latimer, and Smith did not create any policy and lacked the personal involvement necessary to impose liability under 42 U.S.C. § 1983. For the reasons stated below, the Court denies Latimer's motions and grants Defendants' motion for summary judgment.

**FINDINGS OF FACT**

Latimer is incarcerated at the Minnesota Correctional Facility at Oak Park Heights ("MCF-OPH"). Complaint ¶ 1, Docket No. 1; Wheeler AffId. ¶ 5, Docket No. 75. This lawsuit arises out of events that occurred on July 24, 2016 after he threw his food tray because the food was cold and allegedly contaminated with tear gas. Complaint § IV ¶ A, Docket No. 1. The tray hit the correctional officer delivering it (Michael Zachary) on the hand. *Id.* This triggered an Incident Command System ("ICS") response. *Id.* Latimer alleges that, when he put his hands through the book pass[1] of his cell door in order to be handcuffed, Johnson and Eischens yanked and twisted his wrist and hand, using excessive force maliciously and sadistically in a deliberate attempt to inflict unnecessary pain and to break his wrist in retaliation for Zachary having been hit on the hand by Latimer's thrown tray. *Id.* § IV ¶ C. He alleges his left hand is "crippled," he has nerve damage on the backs of both hands, and his right thumb is still painful. *Id.* He also contends that he had put Warden Smith on notice of previous incidents – specifically, informal kites and a formal grievance regarding events in April 2016 – in which guards allegedly used excessive force on him and other inmates, yet she failed to correct these abuses. *Id.* § IV ¶ D.

During discovery, Defendants produced Minnesota Department of Corrections ("DOC") surveillance video showing Latimer throwing his food tray through the book pass and handheld video of the ICS response that shows corrections officers arriving outside his cell, handcuffing him through the book pass, opening the cell door to apply

---

[1] A book pass is a rectangular slot in the cell door through which items can be passed, such as a food tray, and through with an inmate can place his hands in order to be handcuffed without opening the cell door. Wheeler Affid. ¶ 14 and Ex. 10 (three photos showing example of a book pass in cell door), Docket Nos. 75, 75-8.

2

additional restraints, walking him down the hall to a different cell, searching him, and securing him in the new cell. *See* Wheeler Affid. Ex. 8 (handheld video "M2U00476.MPG"[2]) and Ex. 9 (surveillance video), Docket Nos. 76, 77.  The handheld video has audio, but the surveillance video does not. *Id.* Sherlinda Wheeler, Associate Warden of Administration at MCF-OPH, described the events on the handheld video. She identified which person is Eischens and pointed out that he is not one of the four officers shown near Latimer's cell door while Latimer is being handcuffed through the book pass; rather, Eischens is the person who "bends down to apply the leg restraints" after Latimer is handcuffed and the cell door is opened. *Id.* ¶¶ 1, 12 and Ex. 8 (video disc), Docket Nos. 75, 76.  The video does not show Latimer's hands, the handcuffs, or the book pass itself during the handcuffing; rather, it shows several officers in various positions outside his cell door as he is handcuffed through the book pass. *Id.* Ex. 8.

Latimer testified at his deposition that he "was not exactly sure who did what" at the book pass on July 24, 2016. Depo. Tr. 80-81[3] (Sept. 28, 3017), Simon Affid. ¶ 2 and Ex. 1, Docket Nos. 84, 84-1.

---

[2]  Separate video footage labeled "M2U00475.MPG" lasts only several seconds and shows blurry camera movements with no discernable images. *See* Ex. 8 (video disc).

[3]  Q: Why did you name Chad Eischens as a defendant in your July 24, 2016 lawsuit?
A: Because he's the one that twisted my arm. He's one of them. I believe he twisted my arm and tried to break my arm. I believe my arm was broken that day, but the doctor is just covering it up.
Q: And why did you name Tanner Johnson as a defendant in the July –
A: Because I thought he was the other one that was twisting my arm.  But I [saw] the tape.  My case manager showed me the tape, the ones that you guys edited, and you did edit it.  It showed a black sergeant, the black sergeant twisting my arm, at least I believe that's what it showed.
Q: So you're not exactly sure who did what at that point?
A: No.

3

Defendants submitted 57 pages of Latimer's medical records to dispute his claims regarding the extent of his injuries. Wheeler Affid. Ex. 13, Docket No. 78. They state that a nurse saw him on July 24, 2016, noted his wrists were "very red" and his left wrist was "quite swollen," and ordered Ibuprofen. *Id.* at 23.[4] X-rays taken of Latimer's left wrist on July 25 did not show any fracture. *Id.* at 1. On July 27 Latimer was evaluated by Dr. Stephen Craane. *Id.* at 19. Latimer reported left wrist pain and right thumb pain but said he had no sensory loss or abnormal sensations. *Id.* Dr. Craane diagnosed him with a left wrist sprain, as well as reduced range of motion of the right thumb as reported by Latimer. *Id.* Dr. Craane noted that his evaluation did not support Latimer's complaints regarding his right thumb. *Id.* Dr. Craane ordered Tylenol and a splint for Latimer's left wrist and recommended that he rest and elevate his wrist. *Id.*

Latimer testified at his deposition that no doctor has diagnosed him with nerve damage and that his injuries have healed. Depo. Tr. 66, 68, Simon Affid. ¶ 2 and Ex. 1, Docket Nos. 84, 84-1. At a medical evaluation on December 16, 2016 Latimer told a physician's assistant that he was "doing well overall" and had "no medical concerns or complaints at this visit." Wheeler Affid. Ex. 13 at 18 (medical record), Docket No. 78.

After pursuing administrative remedies, Latimer filed this lawsuit,[5] pursuant to 42 U.S.C. § 1983, alleging that Eischens and Johnson used excessive force in violation of the Eighth Amendment when handcuffing him. Complaint § IV ¶ A, Docket No. 1. He alleges that Warden Smith knew about the previous similar constitutional violations but

---

[4]  The records are filed as a single docket entry. The page numbers cited correspond to the page numbers of the electronic case filing (ECF) legend that appears at the top of each page of the docketed entry.

[5]  Latimer filed a separate lawsuit regarding events that occurred in April 2016, *see* Case No. 16-cv-3601 ("the -3601 case").

4

"failed to do anything to fix the illegal situation," did not adequately train and supervise the guards, and thereby created a policy encouraging constitutional violations. *Id.* § IV ¶ D. Latimer seeks $50,000 for future lost wages upon his release from prison and $10,000 in punitive damages. *Id.* § V.

Latimer filed motions for summary judgment [Docket No. 43] and for default judgment [Docket No. 68] based on spoliation of evidence, alleging that video was edited and/or destroyed. Defendants denied that any spoliation occurred [Docket No. 87] and filed a summary judgment motion [Docket No. 71] stating that Johnson and Eischens did not personally participate in handcuffing Latimer and that Warden Smith did not authorize or approve any unconstitutional conduct.

## CONCLUSIONS OF LAW

**1.      Voluntary Dismissal of Defendant Johnson**

In his summary judgment motion and correspondence to counsel for Defendants, after seeing video produced during discovery, Latimer states that Johnson should be dismissed from the lawsuit because he was not one of the guards who participated in handcuffing him during the July 24, 2016 incident. Latimer SJ Motion 17, Docket No. 43; Latimer Letter 3, Docket No. 66-1. The Court therefore dismisses with prejudice all claims against Johnson in this lawsuit.

**2.      Cross-Motions for Summary Judgment and Latimer's Motion for Default Judgment**

Latimer brought motions for summary judgment and for default judgment based on alleged spoliation of video evidence. Docket Nos. 43, 68. Defendants opposed his motions and filed their own motion for summary judgment. Docket No. 71. Latimer did not file any response to Defendants' summary judgment motion.

5

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is "material" only if it might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* In assessing whether a genuine dispute exists, the Court views the evidence in the light most favorable to the non-moving party and affords him all reasonable inferences. *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1115 (8th Cir. 2018). There must be enough evidence to allow a rational jury to find for the non-moving party on the required elements of the claims. *Id.*

### A. Defendants' Motion for Summary Judgment

#### (1) Defendant Eischens

Latimer alleges that Eischens yanked and twisted his wrist and hand through the book pass, using excessive force maliciously and sadistically in a deliberate attempt to inflict unnecessary pain and to break his wrist in retaliation for Zachary having been hit on the hand by Latimer's thrown breakfast tray. Complaint § IV ¶ C, Docket No. 1.

"[T]he Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences." *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) (citing *Whitley v. Albers*, 475 U.S. 312, 318-22 (1986)). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The Eighth Circuit has explained that

6

> [t]his inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."

*Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (quoting *Whitley*, 475 U.S. at 321). "An officer may be held liable only for his or her own use of excessive force." *Id.* at 974. "[T]he subjective motivations of the individual officers are of central importance in deciding whether force [was] used maliciously and sadistically to cause harm in violation of the Eighth Amendment." *Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014) (quotation omitted).

Defendants assert that the claims against Eischens must be dismissed because he did not personally participate in handcuffing Latimer on July 24, 2016. They state that the handheld video shows that Eischens was not personally involved in handcuffing Latimer through the book pass. *See* Wheeler Affid. ¶ 12 and Ex. 8 (video disc), Docket Nos. 75, 76. Eischens' own affidavit is unhelpful because it lacks specificity. *See* Docket No. 83. Latimer himself testified at his deposition that he did not know exactly who did what at the book pass. Depo. Tr. 80-81, Simon Affid. ¶ 2 and Ex. 1, Docket Nos. 84, 84-1. The Court concludes that the evidence in the record establishes that Eischens was not one of the officers who handcuffed Latimer and therefore summary judgment should be granted on the excessive force claims against Eischens.

Sherlinda Wheeler, Associate Warden of Administration at MCF-OPH, submitted an affidavit in which she describes the events on the handheld video. Wheeler Affid. ¶¶ 1, 12 and Ex. 8 (video disc), Docket Nos. 75, 76. Wheeler identifies Eischens in the

7

video, and he is not one of the officers shown at the book pass of Latimer's cell door while Latimer is being handcuffed.  *Id.* ¶ 12 and Ex. 8.  The video shows Eischens bending down to apply leg restraints after the cell door is opened.  *Id.*  The video does not show Latimer's hands, the handcuffs, or the book pass itself during the handcuffing; rather, it shows various officers in various positions outside his cell door as Latimer is handcuffed through the book pass.  *Id.* Ex. 8 (video disc), Docket No. 76.

Eischens' affidavit is unhelpful to the Court because it speaks of "staff" and "we" and "restraining" Latimer, collective statements that do not clearly state what Eischens personally did or did not do on July 24, 2016.  *See* Eischens Affid. ¶¶ 11-13, 15, 20, Docket No. 83.  It does not distinguish between handcuffing Latimer through the book pass, which is the subject of this lawsuit, and the later application of other restraints, which is not.  The poor drafting of this affidavit does a disservice to the named parties in this lawsuit as well as the Court.

Notwithstanding the imprecision in portions of Eischens' affidavit, the video evidence establishes his lack of hands-on involvement in handcuffing Latimer. Wheeler, the Associate Warden of Administration, viewed the handheld video and made sworn statements based on its contents.  *See Guinan v. Boehringer Ingelheim Vetmedica, Inc.*, 803 F.Supp.2d 984, 992 (N.D. Iowa 2011) (affiant's job duties qualified her to review relevant records and make sworn statements about them).  Wheeler stated that she "reviewed the video" and is "familiar with the officers who were involved in the [ICS] response."  Wheeler Affid. ¶ 12, Docket No. 75.  Her description of events and identification of Eischens in the video (described above) show that he was not hands-on in handcuffing Latimer.  *Id.*  Latimer saw the video, testified at his deposition that he did not know who did what in handcuffing him, and did not submit any response

8

to Defendants' summary judgment motion. In addition, nothing Latimer said in his own summary judgment and default motions regarding alleged spoliation (discussed below), which he filed before Defendants brought their summary judgment motion, provides any evidence to contradict Defendants' evidence that Eischens was not personally involved in handcuffing him.

Defendants properly supported their summary judgment motion with admissible evidence regarding the July 24, 2016 events. Latimer has not set forth any specific facts to contradict the video evidence and show that there is a genuine issue for trial with respect to Eischens. *See Scott v. Harris*, 550 U.S. 372, 378-81 (2007) (in ruling on summary judgment, court should view facts in the light depicted by video that captured the events when video establishes there is no genuine issue of material fact); *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010) (same). Because an officer can only be held liable under the Eighth Amendment for "his or her own use of excessive force," *see Jackson* at 974, and Eischens did not participate in handcuffing Latimer, summary judgment should be granted on the excessive force claims against Eischens.

### (2) Warden Smith

Latimer brought claims against Warden Smith in her individual capacity. Complaint 1, Docket No. 1. Individual liability under § 1983 requires direct personal involvement in any deprivation of constitutional rights. *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006). There must be a "causal link to, and direct responsibility for, the deprivation of rights." *Id.* General responsibility for supervising prison operations is insufficient to establish the personal involvement necessary to impose liability under § 1983. *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). To impose liability on a government official for misconduct committed by others, a plaintiff must show an

affirmative link between the occurrence of the misconduct and the adoption of a plan or policy showing he or she authorized or approved such misconduct. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976).

Latimer contends that his informal kites and formal grievances in and after April 2016 put Warden Smith on notice that correctional officers were using excessive force in handcuffing him and other inmates, yet she did nothing to stop their allegedly unconstitutional practices, failed to adequately train and supervise them, and thus created a policy that allowed and encouraged excessive force. Complaint § IV ¶ D, Docket No. 1.

Warden Smith was not present during the July 24, 2016 events and was not personally involved in authorizing any use of force during those events. Second Smith Affid. ¶ 6, Docket No. 80. She does not create use-of-force policies or directives and cannot make unilateral changes to DOC policies, including DOC Division Directive 301.081 entitled Use of Force and Restraints. *Id.* ¶¶ 4, 12. Smith does not create or control the curriculum for training courses given to members of the emergency response team who were involved in the ICS response at Latimer's cell. *Id.* ¶ 14.

Smith's only personal involvement was her review of Latimer's kites and grievances about excessive force in April 2016 and on July 24, 2016. *See* Docket Nos 1-1 and 45 (kites, grievance, responses and related documents). Before responding to his grievance regarding July 24, 2016, she read his kites and the staff's responses, and conducted a review of his allegations. *Id.* ¶ 11. She found no evidence that MCF-OPH staff violated DOC policy, behaved inappropriately, or tried to injure Latimer. *Id.* She therefore signed off on the denial of his grievance. *Id.*; Oct. 19, 2016 Dismissal of Grievance Report 5382, Docket No. 1-1 at 6. Smith's role in reviewing or responding to

Latimer's kites and denying his grievance is insufficient to impose liability under § 1983. *See Rowe v. Norris*, 198 Fed. App'x 579, 580 (8th Cir. 2006) (unpublished) (per curiam).

Latimer has not stated any grounds to support individual liability under § 1983. Accordingly, the Court grants summary judgment on Latimer's claims against Warden Smith.

### B. Latimer's Motions for Summary Judgment and Default Judgment

Latimer's motions for summary judgment [Docket No. 43] and for default judgment [Docket No. 68] both ask the Court to enter judgment in his favor due to Defendants' alleged spoliation of evidence, namely, the editing and/or destruction of video of the July 24, 2016 events. Spoliation is the intentional destruction of evidence for the purpose of suppressing the truth and that results in prejudice to the moving party. *See Stevenson v. Union Pacific Railroad Co.,* 354 F.3d 739, 746, 748 (8th Cir. 2004). Mere negligence, a finding that a party knew or should have known not to destroy relevant evidence, is not enough. *Id.* at 746-48.

Latimer's summary judgment motion[6] primarily addresses his claims in case No. 16-cv-3601 ("3601") regarding events in April 2016. Docket No. 43. Sixteen of the 18 pages discuss the April 2016 events, not the July 24 incident, and refer to several persons who are defendants in -3601 but not in this lawsuit. *See id.* On page 17, Latimer mentions details in both lawsuits and states that there was "clearly spoliation of evidence in [case No. 16-cv-4004 ("4004")] and 3601. The evidence of the state tampering – spoliation – with the films is overwhelmingly in my favor." *Id.* at 17.

---

[6]   Latimer also filed a Memorandum of Law to support his motion, but it consists of only three sentences asking the Court for summary judgment in both lawsuits. *See* Docket No. 44.

11

Like his summary judgment motion, Latimer's motion for default judgment mostly pertains to 3601 and seeks entry of judgment in his favor as a sanction for spoliation. Docket No. 69. His 7-page memorandum of law primarily discusses 3601. Docket No. 69. His exhibits consist of emails and kites that pre-date the July 24, 2016 incident and pertain only to 3601 except for a kite dated February 16, 2017 in which Latimer says he will provide the prison administration with a copy of this 4004 lawsuit. Docket No. 70 at 8.

Latimer's motions are sometimes unclear about which particular spoliation allegations are directed to which lawsuit, but his summary judgment motion and his deposition testimony both allege that Defendants edited the video of the July 24, 2016 incident. *See* Latimer SJ Motion, Docket No. 43 at 17 (alleging editing of the video "show[ing] them trying to [break] my arms"); Depo. Tr. 80-81 ("My case manager showed me the tape, the ones that you guys edited, and you did edit it."), Simon Affid. ¶ 2 and Ex. 1, Docket Nos. 84, 84-1. His default motion also refers to audiotapes he did not receive, but it appears that Latimer may be confused about Defendants' references to "audio" heard on the handheld video, as opposed to separate audiotapes. *See* Latimer Br. 3-4, Docket No. 69. He acknowledges that he has seen the surveillance video showing him throwing his food tray through the book pass and the handheld video showing the ICS response and officers arriving at his cell door, handcuffing him through the book pass, opening the door and transferring him to a new cell. Latimer SJ Motion, Docket No. 43 at 17. It is not clear whether Latimer also claims there are additional videos pertaining to this lawsuit that were spoliated. His Complaint states that, in addition to the handheld video, his "cell security tape" would show he did not resist or refuse any order. Complaint § IV ¶ A, Docket No. 1. No cell surveillance video was

12

produced in this lawsuit except for the footage of Latimer throwing his food tray through the book pass.

There is no evidence that the handheld video of the ICS response or the two surveillance videos[7] showing him throwing the food tray were edited. First, Warden Smith has stated that no video was edited. Smith Affid. ¶ 10, Docket No. 53. Second, the handheld video of the ICS response shows an uninterrupted period of time from the arrival of correctional officers outside Latimer's cell to the unlocking of the cell door after he has been handcuffed through the book pass; the application of additional restraints; and the officers walking him to another cell, searching him, removing the restraints, and securing him in the new cell. *See* Wheeler Affid. Ex. 8 (video disc), Docket No. 76. No breaks appear in this footage. Although the handheld video does not show the actual application of handcuffs to Latimer's hands through the book pass, due to the position of the person holding the camera who is standing several steps back, the video runs continuously as Latimer is handcuffed and then the cell door is opened and he is transferred to a new cell.

To the extent that Latimer contends that additional video(s) existed that Defendants deliberately destroyed in order to thwart his claims, he has not provided any evidence to support this claim. First, there is no record of any kite from Latimer asking that any video of the July 24, 2016 incident be preserved. *See* Smith Affid. ¶ 8, Docket

---

[7] One video has surveillance footage from inside Latimer's cell that shows him throwing the food tray through the book pass, and another video has surveillance footage from outside Latimer's cell door that briefly shows the tray hitting Zachary. Smith Affid. ¶ 7 and Ex. 9 (video disc), Docket Nos. 53, 77.

No. 53; Attachments to Complaint (kites, grievance, and MCF-OPH responses)[8], Docket No. 1-1.  Second, surveillance video is normally only retained for 21 days pursuant to the DOC's retention policy, unless particular footage has been archived for investigatory or training purposes.  *Id.* ¶ 3 and Ex. A (video recording retention policy), Docket Nos. 53, 62.  If video is not saved by DOC staff, it is automatically erased and recorded over by the video system.  *Id.* ¶ 3.  The videos of the July 24, 2016 incident that Defendants produced to Latimer were saved for investigatory use in connection with disciplinary proceedings relating to Latimer throwing his food tray.  *Id.* ¶7.

Third, Latimer did not file this lawsuit until months after the 21-day video retention period expired; Defendants did not have notice of this impending action during the 21 days before any video was erased in accordance with the video retention policy.  Fourth, correctional officers such as Eischens and Johnson do not have access to video at MCF-OPH and have no ability to view, edit, actively save, tamper with, or destroy any video in the course of their work.  *See id.* ¶¶ 3-5.  Warden Smith has the ability to view surveillance video within the 21-day retention period but must submit a request to authorized staff to save any video.  *Id.* ¶ 4.  None of the Defendants played any role in the erasure of cell surveillance video from July 24, 2016.  Even if there were evidence of actual spoliation by *someone*, which there is not, entry of judgment as a spoliation sanction against these Defendants would punish them for acts they did not commit.

---

[8] In several kites, including two within the 21-day period on August 3 and 11, 2016, Latimer states that the ICS response video (the handheld video) and his cell security video show that he did not resist after being instructed to put his hands through the book pass to be handcuffed.  *See* Docket No. 1-1 at 31-34.  However, Latimer does not request in these kites that any particular video be preserved and, more fundamentally, the handheld video was in fact preserved and produced in this lawsuit.  Moreover, as discussed below, Latimer is not prejudiced by the absence of the cell surveillance video.

Finally, Latimer has not explained how he is prejudiced by the absence of additional video footage. The existing video shows that Eischens was not personally involved in handcuffing him through the book pass, and additional video or a different angle would not change that fact. As to Eischens, there is no discrepancy that would be resolved if additional footage of the same event existed.

Latimer has presented no evidence that any Defendant spoliated evidence so as to warrant judgment in his favor in this lawsuit. Accordingly, his motions for summary judgment and for default judgment based on spoliation of evidence are denied.

## RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT:

1. All claims against Defendant Tanner Johnson be DISMISSED WITH PREJUDICE pursuant to Plaintiff's request for voluntary dismissal of this defendant from the lawsuit [Latimer SJ Motion 17-18, Docket No. 43; Latimer Letter 3, Docket No. 66-1].

2. Plaintiff Mark David Latimer's Motion for Summary Judgment [Docket No. 43] and Motion for Default Judgment [Docket No. 68] be DENIED.

3. Defendants' Motion for Summary Judgment [Docket No. 71] be GRANTED.

4. This action be DISMISSED WITH PREJUDICE.

Dated:     July 20, 2018

*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).